IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| PAUL A. SCHWARZ | )<br>)<br>) |
| Plaintiff, | )  Case No.<br>) |
| vs. | )<br>)  **JURY DEMAND** |
| JENSEN FARMS, a trade name, a foreign corporation;<br>FRONTERA PRODUCE LTD., a foreign corporation; | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

## COMPLAINT

COMES NOW the plaintiff above-named, by and through his attorneys of record, Aleshire Robb and Marler Clark, L.L.P., P.S., and for cause of action against the defendants above-named complains, alleges, and states as follows:

### I. PARTIES

1. At all times relevant hereto, the plaintiff Paul A. Schwarz, was a resident of Kansas City, Jackson County, Missouri.

2. The defendant Jensen Farms ("Jensen Farms") does business under this trade name and does business in Colorado. At all times relevant hereto, upon information and belief, Jensen Farms was a manufacturer, distributor and seller of agricultural products in Missouri, including cantaloupe. Upon information and belief, Jensen Farms' principal place of business is located at 28948 RD 30.5, Holly, Colorado 81047. Jensen Farms is a citizen of the state of Colorado, and not a citizen of Missouri.

3. The defendant Frontera Produce, Ltd. ("Frontera") is a corporation organized and existing under the laws of the State of Texas. At all times relevant hereto, Frontera was a

manufacturer, distributor and seller of agricultural products in Missouri, including cantaloupe. Frontera's principal place of business is located in the State of Texas. The defendant Frontera is a citizen of Texas, and not a citizen of Missouri.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because the defendants each have certain minimum contacts with the State of Missouri such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

5. Venue in the United States District Court for the District of Missouri is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the plaintiff's claims and causes of action occurred in this judicial district, and because the defendants Jensen Farms and Frontera were subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## III. FACTS

### The Outbreak

6. On September 2, 2011, the Colorado Department of Public Health and the Environment (CDPHE) announced that it was investigating an outbreak of Listeriosis. On September 9, 2011, CDPHE announced that the likely source of the *Listeria* outbreak was cantaloupe. On September 12, 2011 CDPHE announced that the outbreak of *Listeria* was linked to cantaloupe from the Rocky Ford (Colorado) growing region. It was subsequently determined that contaminated cantaloupes were grown by the defendant, Jensen Farms, and distributed by Frontera.

7. As of the date of filing, the Centers for Disease Control and Prevention (CDC) counts a total of 116 persons infected with any of the four outbreak-associated strains of *Listeria monocytogenes* from 25 states. The number of infected persons identified in each state is as follows: Alabama (1), Arkansas (1), California (1), Colorado (34), Idaho (1), Illinois (1), Indiana (3), Iowa (1), Kansas (7), Louisiana (2), Maryland (1), Missouri (4), Montana (1), Nebraska (6), New Mexico (13), New York (1), North Dakota (1), Oklahoma (11), Oregon (1), South Dakota (1), Texas (17), Virginia (1), West Virginia (1), Wisconsin (2), and Wyoming (3). Twenty-three deaths have been reported: 5 in Colorado, 1 in Indiana, 2 in Kansas, 2 in Louisiana, 1 in Maryland, 1 in Missouri, 1 in Nebraska, 5 in New Mexico, 1 in New York, 1 in Oklahoma, 2 in Texas, and 1 in Wyoming. The number of people ill, hospitalized, and dead as a result of the *Listeria* outbreak caused by the defendants' contaminated cantaloupes is expected to increase.

8. On or about September 19, 2011, the Food and Drug Administration announced that it found *Listeria monocytogenes* in samples of Jensen Farms' Rocky Ford-brand cantaloupe taken from a Denver-area store and on samples taken from equipment and cantaloupe at the defendant Jensen Farms' packing facility. Tests confirmed that the *Listeria monocytogenes* found in the samples matches one of the multiple different strains of *Listeria monocytogenes* associated with the multi-state outbreak of listeriosis.

9. Jensen Farms recalled its Rocky Ford-brand cantaloupes, on September 14 in response to the multi-state outbreak of listeriosis. Cantaloupes from other farms in Colorado, including farms in the Rocky Ford growing area, have not been linked to this outbreak.

## Listeriosis

10. Listeriosis is a serious illness that is caused by eating food contaminated with the bacterium *Listeria monocytogenes*. Although there are other types of *Listeria,* most cases of

listeriosis are caused by *Listeria monocytogenes*. *Listeria* is found in soil and water. Vegetables can become contaminated from the soil or from manure used as fertilizer. Animals can carry the bacterium without appearing ill and can contaminate foods of animal origin, such as meats and dairy products. *Listeria* has been found in a variety of raw foods, such as uncooked meats and unpasteurized (raw) milk or foods made from unpasteurized milk. *Listeria* is killed by pasteurization and cooking; however, in certain ready-to-eat foods, like hot dogs and cold cuts from the deli counter, contamination may occur after cooking but before packaging.

11. Although healthy persons may consume contaminated foods without becoming ill, those at increased risk for infection may become ill with listeriosis after eating food contaminated with even a few bacteria.

12. A person with listeriosis may develop fever, muscle aches, and sometimes gastrointestinal symptoms such as nausea or diarrhea. If infection spreads to the nervous system, symptoms such as headache, stiff neck, confusion, loss of balance, or convulsions can occur. In immune-deficient individuals, *Listeria* can invade the central nervous system, causing meningitis and/or encephalitis (brain infection). Infected pregnant women ordinarily experience only a mild, flu-like illness; however, infection during pregnancy can lead to miscarriage, infection of the newborn or even stillbirth. The most recent data suggest that about 2,500 illnesses and 500 deaths are attributed to listeriosis in the United States annually.

### Paul A. Schwarz's Listeria Infection

13. In the weeks that preceded his *Listeria* illness, Mr. Schwarz consumed cantaloupe on multiple occasions, including at least one *Listeria*-contaminated cantaloupe manufactured, distributed, and sold by the defendants.

14. Mr. Schwarz fell ill on or about September 15, 2011. He was treated at the

hospital late on September 15, 2011 for abdominal pain, and released.

15.  Mr. Schwarz subsequently developed increasing weakness, until it reached the point that he could no longer move his legs. On September 19, 2011, he was taken by ambulance to the hospital and admitted. While in the hospital, Mr. Schwarz tested positive for *Listeria*.

16.  Mr. Schwarz has been informed by medical and health officials that his *Listeria* infection is associated with the multi-state outbreak linked to Jensen Farms and Frontera Produce. At the time of the filing of this complaint, Mr. Schwarz remains hospitalized as a result of his *Listeria* infection.

17.  Mr. Schwarz's *Listeria* infection and related injuries were directly and proximately caused by his consumption of contaminated cantaloupe manufactured and distributed by Jensen Farms and Frontera Produce.

## IV. CAUSE OF ACTION: STRICT LIABILITY

18.  The defendants, Jensen Farms and Frontera, manufactured and sold the adulterated food that injured the plaintiff.

19.  The defendants manufactured food products, and in particular, cantaloupe for sale to the public.

20.  Cantaloupe that is contaminated with *Listeria monocytogenes* is unsafe and thus defective when used in a reasonably foreseeable manner—*i.e.,* consuming it.

21.  *Listeria monocytogenes*-contaminated cantaloupe is unfit for human consumption, and unreasonably dangerous to an extent beyond that contemplated by the ordinary consumer.

22.  The cantaloupe that the plaintiff purchased and consumed from the defendants

was contaminated with *Listeria monocytogenes* and was therefore, as a result, defective and unreasonably dangerous.

23. The cantaloupe the plaintiff purchased and consumed was contaminated with *Listeria monocytogenes* when it left the defendants' control.

24. The plaintiff's consumption of the contaminated cantaloupe caused him to become infected with *Listeria monocytogenes* and suffer injury, as a direct and proximate result.

25. The defendants are strictly liable to the plaintiff for the harm proximately caused by the manufacture and sale of an unsafe and defective cantaloupe.

## V. CAUSE OF ACTION: NEGLIGENCE

26. The defendants designed, manufactured, distributed, and sold food products, including specifically cantaloupe, that were contaminated with *Listeria monocytogenes,* a deadly pathogen. The cantaloupe, as a result of contamination, were unfit for human consumption, thus defective, and were not reasonably safe as designed, constructed, manufactured, and sold.

27. The defendants owed a duty to all persons who consumed their products to manufacture and sell cantaloupe that were safe to eat, that were not adulterated with deadly pathogens, like *Listeria monocytogenes*, and that were not in violation of applicable food and safety regulations.

28. The defendants owed a duty to all persons who consumed their products a duty to maintain their premises in a sanitary and safe condition so that the cantaloupe they manufactured and sold would not be contaminated with a deadly pathogen, like *Listeria monocytogenes.*

29. The defendants breached the duties owed to their customers by committing the following acts and omissions of negligence:

29.1   Failed to adequately maintain or monitor the sanitary conditions of their products, premises, and employees;

29.2   Failed to properly operate their facilities in a safe, clean, and sanitary manner;

29.3   Failed to apply their food safety policies and procedures to ensure the safety and sanitary conditions of their food products, premises, and employees;

29.4   Failed to prevent the transmission of *Listeria monocytogenes* to consumers of their cantaloupe;

29.5   Failed to properly train their employees and agents how to prevent the transmission of *Listeria monocytogenes* on their premises, or in their food products;

29.6   Failed to properly supervise their employees and agents to prevent the transmission of *Listeria monocytogenes* on their premises, or in their food products.

30.   The defendants had a duty to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling, and sale of their food products.

31.   The defendants owed a duty to the plaintiff to use reasonable care in the manufacture, distribution, and sale of their food products, to prevent contamination with *Listeria monocytogenes*. The defendants breached this duty.

32.   The plaintiff's injuries proximately and directly resulted from the defendants' negligence.

## VI. CAUSE OF ACTION: BREACH OF WARRANTY

33. By offering cantaloupe for sale to the general public, the defendants impliedly warranted that such cantaloupe was safe to eat, that it was not adulterated with a deadly pathogen, and that the cantaloupe had been safely prepared under sanitary conditions.

34. The defendants breached the implied warranties with regard to the food and drink they manufactured and sold to the plaintiff.

35. The plaintiff's injuries proximately and directly resulted from the defendants' breach of implied warranties, and the plaintiff is thus entitled to recover for all actual, consequential, and incidental damages that flow directly and in a foreseeable fashion from these breaches.

## VII. DAMAGES

36. As the direct and proximate result of the defendants' acts and omissions, the plaintiff suffered ordinary, incidental, and consequential damages as would be anticipated to arise under the circumstances, which shall be fully proven at the time of trial.

## VIII. PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays as follows:

(1) That the court award the plaintiff judgment against defendants for damages in an amount in excess of $75,000.

(2) That the court additional award all such other sums as shall be determined to fully and fairly compensate the plaintiff for all general, special, incidental and consequential damages incurred, or to be incurred, by the plaintiff as the direct and proximate result of the acts and omissions of the defendants;

(3) That the court award the plaintiff his costs, disbursements and reasonable attorneys' fees incurred;

(4) That the court award the plaintiff the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

(6) That the court award such other and further relief as it deems necessary and proper in the circumstances.

DATED this 18 day of October, 2011.

Respectfully submitted,

ALESHIRE ROBB, P.C.

*[signature: Gregory W. Aleshire]*

Gregory Aleshire, #38691
2847 S. Ingram Mill Road A-102
Springfield, MO 65804
Phone: (417) 869-3737
Fax: (417) 869-5678
galeshire@aleshirerobb.com

AND

MARLER CLARK, L.L.P., P.S.
William D. Marler, WSBA #17233
(Pending Admission *Pro Hac Vice*)
1301 Second Avenue
Suite 2800
Seattle, WA 98101
Phone: (206) 346-1888
Fax: (206) 346-1898